JON D. PIERCE, Plaintiff-Appellee, v. BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF THE CITY OF WAUKEGAN, Defendant-Appellant.

Second District No. 2—88—0280

Opinion filed December 29, 1988.

Ned L. Fisher, of Hall, Holmberg, Roach, Johnston, Fisher & Lessman, of Waukegan (Albert L. Hall, Jr., of counsel), for appellant.

Daly & Daly, of Waukegan (Dennis P. Daly, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant, the Board of Trustees of the Police Pension Fund of the City of Waukegan, Illinois, appeals from the decision of the circuit court of Lake County which reversed its denial of a disability pension to plaintiff, Jon Pierce.

On appeal, defendant raises two issues: (1) the trial court's decision was against the manifest weight of the evidence, and (2) it is improper for a police officer to apply for a disability pension while still employed full time.

Plaintiff was a police officer with the Waukegan police department since April 2, 1975. While on vacation on January 5, 1985, plaintiff was involved in an altercation at Bertrand Bowling Lanes, Waukegan. An employee of Bertrand's, knowing that plaintiff was a police officer, requested him to assist in placing a disorderly patron in custody. In the process of subduing the subject, plaintiff received an injury to his right knee when he fell and/or was kicked. Plaintiff received extensive medi-

cal treatment, including two surgical procedures, to his right knee.

Plaintiff, put on limited-duty status following the injury, continued to work full time until October 1985. Plaintiff also continued to work at a number of off-duty, part-time security positions at local business establishments. Upon learning of plaintiff's off-duty positions, police chief Ronald Houri terminated plaintiff's participation in said jobs in or about October 1985.

From October 16, 1985, to the end of April 1986, plaintiff was on duty-injury status. In the following months, he was both briefly compensated under workers' compensation and suspended for disciplinary purposes. He returned to work on July 7, 1986, assigned to light-duty status.

On August 6, 1986, plaintiff filed his application and certificate for disability pension. (Ill. Rev. Stat. 1985, ch. 108½, par. 3—115.) Pursuant to the statute, defendant selected three physicians to evaluate plaintiff's physical condition. All physicians agreed that plaintiff could not return to unlimited, full-time duty.

Plaintiff worked on limited duty from July 7 through December 28, 1986, and was suspended with pay starting on or about December 29, 1986. Pursuant to a hearing in a proceeding separate from the instant case, the Waukegan Civil Service Commission discharged plaintiff as a patrolman for the city. The commission's decision was affirmed by the circuit court of Lake County.

After a series of hearings, defendant denied plaintiff's disability application. The trial court reversed the defendant's denial, and this appeal followed.

Defendant initially argues that the trial court's reversal is against the manifest weight of the evidence. Defendant contends that the court below considered only the medical reports submitted to the board and virtually ignored all the other evidence. Moreover, defendant asserts that the trial court appeared to have weighed the medical reports and other evidence solely on a quantitative rather than qualitative basis.

■ A review of the relevant evidence demonstrates that the trial court's decision was not against the manifest weight of the evidence. Where an administrative order is against the manifest weight of the evidence or where an agency has acted arbitrarily or capriciously, a reviewing court should not hesitate to intervene. *Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 207.

Pursuant to the statute, plaintiff was examined by three physicians selected by defendant, Drs. Baehr, Apfelbach, and Kroft (who was later replaced by one of his partners, Dr. Rosenzweig).

A November 6, 1986, letter from Dr. James Baehr, an orthopedic surgeon, to defendant concluded thusly:

"Although there are no objective signs of knee instability or knee muscle wasting, the patient's inability to rehabilitate the knee or return to his full activity would mean in my opinion that he is unable to continue in the usual duties as a police officer and therefore would be eligible for medial [sic] retirement and disability."

In response to several questions posed by defense counsel, Dr. Baehr wrote in a December 19, 1986, letter:

"The patient I'm sure could carry out any type of desk activity without difficulty but probably would have increased symptoms and probably some impaired ability to carry out strenuous activities in the field."

Dr. Henry Apfelbach, an orthopedic specialist, examined plaintiff on October 29, 1986, and in a letter to defendant dated November 12, 1986, concluded:

"At the present time this patient states he is working as a detective and is not working in a squad car. This patient exhibits a paucity of objective finding referrable [sic] to the right knee. However, injury to the cartilaginous undersurface of the patella is described so that a degree of subpatellar pain can be expected. I feel this patient can continue the type of work that he is doing at present but I do not feel that he can pursue an occupation in which he is forced to run and maintain a high degree of agility."

In response to questions from defense counsel, Dr. Apfelback wrote that he did not expect plaintiff's condition to improve with or without physical therapy, that he did not recommend further physical therapy, and that he did not anticipate any change in plaintiff's physical status.

Dr. Robert Rosenzweig examined plaintiff on November 3, 1986. In a November 4, 1986, letter to defendant, Dr. Rosenzweig made the following recommendation:

"Mr. Pierce is capable of a desk job but cannot perform the regular duties of a policeman and all that entails."

In response to questions posed by defense counsel, Dr. Rosenzweig stated that plaintiff's prognosis was poor, his condition would not improve, and no further physical therapy was recommended. Finally, Dr. Rosenzweig wrote that plaintiff would not be able to do *active* police work.

Following his injury, plaintiff underwent two arthroscopic proce-

dures performed by Dr. Edward Hamming, an orthopedic surgeon. On April 22, 1985, he underwent arthroscopy with the removal of a medial synovial plica and a fragment of torn medial meniscus. Then on October 25, 1985, a second arthroscopic procedure was performed on him. A chondral defect of the patella was found, and the lateral retinaculum was released.

At a hearing before the defendant on April 14, 1987, Dr. Hamming testified as follows:

"Q. So based upon your history and your examination, did you, in fact, form an opinion as to whether or not he [plaintiff] was able to perform police duties?

A. In terms of vigorous police duties, I don't think he could do it.

Q. I'm referring now to a letter that you wrote to the City of Waukegan, October 21, 1986, do you have a copy of that there?

A. Yes, I have it.

Q. In that letter, you state that at this time he has maintained a maximum benefit from physical therapy, feel he's reached the plateau, and we do not see that he'll be fit for full duty as an officer. He would be a hazard to both himself and to other persons working with him as he does not have the agility and ability to use the knee as he did before. Is it still your opinion that that is the situation with John?

A. Yes."

Dr. Nicholas Bellios, the city physician, had examined plaintiff at various times since the latter's injury. In a September 25, 1986, letter to the police chief, Dr. Bellios wrote, "In view of my own findings in association with the findings in the letter from Dr. Hamming, I recommend we continue Officer Pierce on limited duty for an additional period of 3 months. He is to be reexamined in 3 months." No further communications from Dr. Bellios are to be found in the record.

Defendant argues that the trial court ignored two other physicians' statements made in regard to plaintiff's condition. Respondent sought to enter into evidence a written statement made by Dr. John Dwyer, an orthopedic specialist, after examining plaintiff on November 26, 1986. Dr. Dwyer examined plaintiff at the City of Waukegan's request in regard to his workers' compensation claim. Dr. Dwyer wrote:

"In summary, then the *** claimant [plaintiff] shows evidence of post-arthroscopy knee on the right with no evidence of any disability. On the basis of this examination, he should be able to continue in his normal occupational duties and activities of daily

living without any restrictions, limitations, further diagnostic work-up or treatment."

Also, in relation to plaintiff's worker's compensation claim, Dr. Irwin Barnett examined him on August 20, 1985, and September 9, 1986. On both occasions, Dr. Barnett determined that plaintiff had a moderate loss of use of the right lower extremity "on an industrial basis."

In addition, defendant cites other evidence in support of its argument. Plaintiff worked a number of off-duty jobs until mid-October 1985, at which time the police chief terminated his participation therein. Defendant argues that such off-duty work demonstrates that the pain was not debilitating to the point where plaintiff could not carry out most of a police officer's duties. Defendant next asserts that plaintiff was seen operating a kick-starting motorcycle, thus showing that he could perform said activity without pain or difficulty. Defendant also cites a duty-related incident on September 30, 1985, in which plaintiff, while working a desk job, helped to wrestle an unruly subject to the ground, without apparent ill effect.

■ Whether or not the examination reports of Drs. Dwyer and Barnett are inadmissible hearsay, as plaintiff maintains, said examinations in no way balance the conclusions of Drs. Baehr, Apfelback, and Rosenzweig, all of whom stated that plaintiff could not assume the full duties of a policeman. The other facts cited by defendant to indicate that plaintiff could assume the full duties of a policeman are similarly unconvincing. The fact that plaintiff once wrestled a prisoner after his injury, that he worked several off-duty security jobs, or that he kick-started his Kawasaki does not demonstrate that he is capable of performing all duties required of a policeman. Plaintiff is not arguing that he is totally incapacitated. Rather, he is asserting that he cannot perform all the duties expected of a full-time police officer. The evidence clearly supports the trial court's finding that defendant's denial of a disability pension to plaintiff was against the manifest weight of the evidence.

Further, defendant argues that plaintiff's application for a disability pension was premature in that he was serving full time and was not physically or mentally disabled so as to cause his suspension or retirement from police service. Specifically, defendant argues that plaintiff had to be either suspended or retired on account of his disability before he could make an application for disability pension.

The relevant statute reads in pertinent part:

"If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty,

is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a disability retirement pension of 65% of the salary attached to the rank on the police force held by the officer at the date of suspension of duty or retirement. A police officer shall be considered 'on duty,' while on any assignment approved by the chief of the police department of the municipality he or she serves, whether the assignment is within or outside the municipality." Ill. Rev. Stat. 1985, ch. 108½, par. 3—114.1.

"A disability pension shall not be paid unless there is filed with the board certificates of the police officer's disability, subscribed and sworn to by the police officer if not under legal disability, ***, and by the police surgeon (if there be one) and 3 practicing physicians selected by the board. The board may require other evidence of disability." Ill. Rev. Stat. 1985, ch. 108½, par. 3—115.

▮ Initially, we note that the rules governing police pensions are to be liberally construed in favor of those to be benefitted. *Johnson v. Retirement Board* (1986), 114 Ill. 2d 518.

Defendant argues that the statute does not provide that an officer is entitled to a disability pension when he is "disabled from performing normal or regular police duties," rather it clearly says he is entitled to his pension when he is "disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service."

Defendant points out that, for a number of years, Waukegan's police chiefs had followed an unwritten policy that each and every police officer in the city's employ must be able to fulfill all the duties of a police officer, including, but not limited to, the ability to quell disturbances, subdue suspects, and chase them, if necessary, and otherwise engage in strenuous exercise. Defendant admits that there was literally no place for an officer suffering from a partial disability to remain on the police force. Notwithstanding those former practices, the current police chief had put defendant on limited-duty status. Defendant notes that such a practice makes use of valuable, functioning officers who may no longer be able to fulfill all normal duties. Defendant then asserts that this arrangement could have continued indefinitely, but for the disciplinary charges (not part of this appeal), which led to defendant's dismissal from the police force. In essence, defendant makes a public policy argument that it is undesirable and wasteful to have disabled officers applying for disability pension while they are still capa-

ble of performing light-duty police tasks.

■ We find nothing in the statutory language that requires an applicant to wait until he is suspended or retired on account of his disability to make his application. Courts will not inject provisions not found in the pertinent statute. (*In re Objection of Linda Lou Cook to Referendum Petition of Marjorie Pierce* (1984), 122 Ill. App. 3d 1068.) Irrespective of whether the statute promotes a wasteful loss of officers, who can perform some, but not all police duties, it stands for the proposition that a disabled officer, *i.e.*, one who cannot perform all police duties, can apply for a disability pension whether he is on active duty or retired/suspended due to said disability.

The evidence demonstrates that plaintiff was not capable of performing normal police duties at the time of his August 6, 1986, application for a disability pension. He was on limited-duty status. Further, three physicians' examinations performed only three months later resulted in the unanimous conclusion that his condition was permanent and that he could not return to full-duty status. This assessment is echoed by plaintiff's treating physician, Dr. Hamming, who found that as of October 22, 1986, plaintiff's condition had stabilized and no further physical therapy was necessary. Accordingly, as of August 6, 1986, plaintiff was clearly within his statutory right to apply for a disability pension.

We also find that plaintiff was serving on limited duty at the *convenience* of the police chief. There were no safeguards or rules protecting his limited-duty status, which, apparently, could be terminated, with minimal notice, at any time. Under such circumstances, it is unreasonable to expect a disabled officer to delay applying for disability, on the tenuous hope that such limited-duty status will continue indefinitely.

Finally, defendant's reliance on *Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, is misguided. As plaintiff points out, *Hahn* stands for the proposition that a police officer may retire with a specific reservation of his pension rights and does not hold that an officer must resign in order to apply for pension benefits. As such, *Hahn* does not conflict with this decision.

For the reasons stated above, we affirm the trial court's judgment.

Affirmed.

DUNN and McLAREN, JJ., concur.