THOMAS STEC, Plaintiff-Appellant, v. OAK PARK POLICE PENSION BOARD *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—89—2578

Opinion filed September 28, 1990.

Stanley H. Jakala, of Berwyn, for appellant.

Doss, Puchalski & Keenan, Ltd., of Chicago (Richard J. Puchalski, of counsel), for appellees.

JUSTICE EGAN delivered the opinion of the court:

The issue before us is whether a police officer who resigns after

applying for a disability pension is barred from that pension because of his resignation. The defendant, Oak Park Police Pension Board (the Board), held that he is so barred, and the circuit court agreed.

The plaintiff, Thomas Stec, was hired by the Oak Park Police Department (the Department) as a patrol officer for the Village of Oak Park on May 2, 1977. He served in various capacities as a patrol officer and assumed increasing responsibility over the years.

On March 17, 1988, William Kohnke, the chief of police for the Village of Oak Park, filed three disciplinary charges against the plaintiff with the Fire and Police Commission, seeking the plaintiff's removal from the Department. The plaintiff was charged with having violated State law regarding perjury and Department rules and regulations regarding truthfulness in that, in applying for promotion to sergeant, the plaintiff made false statements under oath which asserted that he had earned a B.A. degree from Northwestern University and a J.D. degree from DePaul University and that he had failed to correct such representations which appeared in three of his performance appraisals.

On April 25, 1988, the plaintiff applied for a duty-related disability pension pursuant to article 3, section 3—114.1, of the Illinois Pension Code (Ill. Rev. Stat. 1987, ch. 108½, par. 3—114.1). The plaintiff alternatively sought a non-duty-related disability pension pursuant to article 3, section 3—114.2, of the Illinois Pension Code (Ill. Rev. Stat. 1987, ch. 108½, par. 3—114.2). On April 26, 1988, the plaintiff tendered his resignation from the Department, specifically reserving his right to pursue a disability pension; the plaintiff's resignation was to take effect on April 28, 1988.

The Board conducted a hearing to determine the disability claim of the plaintiff on December 12, 1988. The plaintiff testified that he was sworn in as a police officer on May 2, 1977, and that he served as a patrol officer until his resignation on April 28, 1988. He had served as a plainclothes officer, a youth officer and a detective. Although his rank and pay remained that of a patrol officer, the plaintiff began to assume increasing responsibility in 1982 when he was placed in a supervisory position as the Department's first training officer. By 1987, the plaintiff simultaneously served as the Department's training, budget and planning officer as well as then Chief Bergstrom's administrative aide. He also handled the documentation for the lawsuits which were filed against the Department and responded to the more sensitive complaints regarding police brutality and use of deadly force. As a patrol officer in a supervisory position, the plaintiff found that each new assignment brought additional pressure, stress, criti-

cism and hostility. Chief Bergstrom and then later Chief Kohnke both denied his requests for transfers.

As a result of his duties, the plaintiff worked 48 to 60 hours a week; he also worked at times as a security guard during his off-duty hours. The plaintiff's problems began when, as a patrol officer, he was given a supervisory role on the chief's administrative staff. As his responsibilities increased, so too did his problems. Specifically, he encountered marital problems as well as various medical and psychological problems, including high blood pressure, an ulcer, depression, lack of concentration, nervousness, thoughts of suicide and alcohol abuse. The plaintiff sought both medical and psychiatric help for his various problems. Although the plaintiff became a member of Alcoholics Anonymous, he never entered a detoxification center.

As a member of the administrative staff, the plaintiff was not required to carry a gun except for a couple of months during the winter of 1987 when, in addition to his other duties, he was required to patrol the streets for two hours each day during Christmastime. By the end of December, the plaintiff realized that he could no longer trust his judgment in carrying a weapon, and he turned over his weapons to other officers. He worried that his lack of good judgment would endanger both the safety of others as well as himself. He finally realized that he could endanger lives by carrying a weapon after a couple of incidents occurred in the fall of 1987 during his job as a part-time security guard. In one incident, he felt that he could have rashly and needlessly shot an unarmed teenager.

By March 1988 the plaintiff concluded that he was no longer fit to do his duties. His judgment was definitely affected by his alcoholic problems. Although he first began to drink after the midnight shift as a patrolman, he did not feel that he had an alcohol problem until after he became a training officer.

The plaintiff explained that his decision to resign from the police force was a process which happened over time. He actually decided to leave the Department three or four months before he tendered his resignation; the realization that he had to leave actually came to the forefront in December 1987 when he was hospitalized. He was on sick leave for most of March and all of April 1988. He did not continue sick leave because he knew that he was not going to remain an officer; he recognized that he could not do the job; and he did not want to be an officer.

Several factors contributed to the plaintiff's decision to resign. Primarily, the plaintiff did not feel that he could do the job any longer; he could not wear a gun; he could not trust his judgment; he

had no confidence in his ability. The plaintiff suffered from a quick temper and became easily enraged. He also had problems with Chief Kohnke, who let him know that he wanted to fire him as part of his plan to get rid of everyone who had been assigned to the administrative staff by the previous chief. He had marital problems that caused him to stay away from his Oak Park home which led to an investigation into whether he was abiding by the residency requirements of the Department which greatly upset him. His problems kept building until he finally decided to leave the Department sometime in January or February.

Certain medical documentation was also admitted as part of the administrative record. On March 29, 1988, Chun C. Tsai, M.D., conducted a psychiatric evaluation of the plaintiff about which he reported on March 31. Dr. Tsai diagnosed the plaintiff as suffering from major depression, alcohol dependence and marital discord. Dr. Tsai prescribed daily medication and weekly counseling for anxiety and depression. He also prescribed medication to deter his drinking. Dr. Tsai concluded that the plaintiff was not presently fit to function as a police officer and recommended that he take a sick leave or leave of absence.

On September 8, 1988, Anthony M. D'Agostino, M.D., reported that the plaintiff was still suffering from alcoholism and major depression. The doctor found the plaintiff unfit for duty as a police officer. Although Dr. D'Agostino admitted that the plaintiff's history came exclusively from the plaintiff, appearances led him to conclude that the plaintiff's situation was at least, in part, a direct outgrowth of his service in the police department.

In August 1988, at the request of the Pension Board, Erick Ostrov, J.D., Ph.D., conducted a clinical psychological evaluation of the plaintiff to determine his ability to function as a police officer about which he reported on October 4, 1988. Dr. Ostrov concluded that, although the plaintiff's alcohol dependence was reportedly in remission, he still suffered from significant depression and was unable to function as a police officer. He suggested that the plaintiff's poor concentration and impaired judgment would preclude him from meeting the responsibilities of his position. Although the plaintiff contended that he could never go back to being an officer, Dr. Ostrov suggested that the plaintiff may have meant that he may never want to function as an officer again. Dr. Ostrov recommended reevaluation in six months.

Clifton Rhead, M.D., conducted a psychiatric examination of the plaintiff on August 18, 1988, about which he reported on September 8, 1988. Dr. Rhead believed that the plaintiff's deterioration resulted

from his sense of inadequacy following his promotion and reassignment to administrative duties within the police department. Increasing alcohol dependence compounded his deterioration. The plaintiff was neither malingering nor consciously exaggerating his symptoms. Although Dr. Rhead believed that the plaintiff would have responded similarly to stresses in other vocations if they had been as severe, he concluded that the immediate precipitant of his illnesses was the stress which he encountered in attempting to carry out his police duties.

Without expressing any analysis of the evidence, the Board found that "the more detailed and credible medical evidence" led it to conclude that the plaintiff's emotional and mental states were not duty related. However, the Pension Board explicitly held that it was not required to base its decision on the evidence and did not do so. Instead, the Pension Board concluded that the plaintiff had "voluntarily resigned" from the Department "in lieu of disciplinary proceedings." Since he had resigned from the police force, the Board no longer considered the plaintiff to be a "police officer" within the meaning of the term under section 3—106 of the Illinois Pension Code. (Ill. Rev. Stat. 1987, ch. 108½, par. 3—106.) The Board reasoned that, because the plaintiff was no longer a police officer, he could not be compelled to submit to further medical examination to verify continuing disability as required by the Pension Code (Ill. Rev. Stat. 1987, ch. 108½, par. 3—115), nor could he be returned to active duty when no longer disabled or be assigned to emergency service (Ill. Rev. Stat. 1987, ch. 108½, par. 3—116). Basing its decision on the authority of *Di Falco v. Board of Trustees of the Firemen's Pension Fund of the Wood Dale Fire Protection District No. One* (1988), 122 Ill. 2d 22, 521 N.E.2d 923, and *Freberg v. Board of Trustees of the Firemen's Pension Fund* (1970), 128 Ill. App. 2d 369, 262 N.E.2d 22, the Board concluded that the plaintiff was no longer eligible for either a duty-related *or* a non-duty-related disability pension under the Illinois Pension Code. (Ill. Rev. Stat. 1987, ch. 108½, pars. 3—114.1, 3—114.2.) It also indicated that the plaintiff was entitled to a refund of his individual pension contributions. (Ill. Rev. Stat. 1987, ch. 108½, par. 3—124.) Relying solely on *Di Falco*, the circuit court adopted the substance of the Board's reasoning and affirmed the Board's denial of the plaintiff's disability application.

We will reverse an administrative agency's decision only when it is either legally erroneous or factually against the manifest weight of the evidence. (*Donnells v. Woodridge Police Pension Board* (1987), 159 Ill. App. 3d 735, 512 N.E.2d 1082.) In this case, the relevant facts

are undisputed and the issue is one of law. We conclude that the decision of the Board was legally erroneous.

■■ Article 3 of the Illinois Pension Code (Ill. Rev. Stat. 1987, ch. 108½, par. 3—101 *et seq.*) governs all matters relating to the police pension fund, and we must liberally construe its provisions in favor of police officers and their surviving dependents. (*Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, 485 N.E.2d 871; see also Ill. Rev. Stat. 1987, ch. 108½, par. 3—101.) In construing the statute, it is our duty to enforce the pension law, as enacted, according to the plain and unmistakable provisions, attaching the popular meaning to the words unless the spirit and purpose of the act dictate otherwise. *Edwards v. Board of Trustees of Police Pension Fund* (1974), 22 Ill. App. 3d 260, 317 N.E.2d 364.

■■■ To receive a duty-related disability pension, a police officer must be suspended or retired from the police force after having been found physically or mentally disabled for duty as a result of a sickness, accident or injury which resulted from the performance of his duty. (Ill. Rev. Stat. 1987, ch. 108½, par. 3—114.1.) To receive a non-duty-related disability pension, a police officer must be suspended or retired from the police force after having been found physically or mentally disabled for duty as a result of any cause other than the performance of an act of duty. (Ill. Rev. Stat. 1987, ch. 108½, par. 3—1141.2.) Section 3—106 defines a police officer as any person who is appointed to the police force of a police department and sworn and commissioned to perform police duties, who is found physically and mentally fit to perform the duties of a police officer and who timely applies to come under the provisions of the code. (Ill. Rev. Stat. 1987, ch. 108½, par. 3—106.) An officer who has resigned from the police force is not listed among the officers and other police-related personnel who are explicitly excluded from the provisions of the code. Ill. Rev. Stat. 1987, ch. 108½, par. 3—109.

There is one case which is directly in point and is contrary to the Board's position: *Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, 485 N.E.2d 871. Hahn applied to the pension board for a disability pension after his police chief filed charges against him. Like the plaintiff here, Hahn then resigned from the police department specifically preserving his rights to a pension. The pension board conducted hearings on Hahn's application, as in this case, while disciplinary charges were still pending against him. The pension board finally denied Hahn's application for disability, in part, on the ground that his voluntary resignation had completely severed his membership in the police department and his right to a pension or other benefits

which might have accrued to him as an officer. The circuit court affirmed the board's denial. However, the appellate court recognized that, even though Hahn had voluntarily resigned from the force, he did not intend to relinquish his pension rights since he had applied for the pension *before* resigning and specifically preserved his rights in his resignation letter. (*Hahn*, 138 Ill. App. 3d at 211-12.) Consequently, it held that Hahn's "retirement [resignation]" did not deprive him of his right to a disability pension, since the Pension Code specifically anticipated that police officers can be retired. *Hahn*, 138 Ill. App. 3d at 213; see also Ill. Rev. Stat. 1987, ch. 108½, pars. 3—114.1, 3—114.2, 3—116.

The Board argues that we should not follow *Hahn* for two reasons. First, it argues that *Hahn* is an opinion of the Second District Appellate Court and that, therefore, we are not required to follow it. Second, the Board maintains that *Di Falco* "appears to overrule *Hahn*."

■ It is true that we need not in all instances follow the decisions of the appellate courts of other districts. "However, there are compelling reasons to do so unless a district has made a determination of its own contrary to that of another district, or there is a split of authority among the districts." (*People v. Ward* (1989), 192 Ill. App. 3d 544, 554, 548 N.E.2d 1120, 1127.) This district has not made any determination of its own and there is no split of authority among the other districts.

With respect to *Di Falco*, we do not interpret the opinion as an overruling of *Hahn*. Contrary to the defendants' assertion, we do not find the facts of *Di Falco* similar to those in this case. Di Falco was a probationary fireman-paramedic who allegedly sustained spinal injuries while on duty. After almost six months of disability leave, Di Falco was discharged from the firefighting service. Unlike the plaintiff here, Di Falco applied for a disability pension almost one year *after* having been *discharged* from service. Both the pension board and the circuit court found that Di Falco was not entitled to a disability pension because by having been discharged, he was not employed as a fireman *at the time of his application.*

The issue in *Di Falco* was whether a discharged fire fighter could apply for a disability pension one year *after* he had been removed from the force even if his injury occurred while he was on duty as an active, although probationary, member of the fire department. The supreme court held that section 4—110 of the Pension Code, which was applicable to fire fighters, required that an applicant for a duty-related disability pension be a fireman both at the time of his impair-

ment *and* at the time of his application. (*Di Falco*, 122 Ill. 2d at 30.) Therefore, in order to receive a disability pension, a fire fighter had to meet a condition precedent which was to be a member of the fire service at the time he applied for his pension. (*Di Falco*, 122 Ill. 2d at 30-31.) Because Di Falco had been dismissed almost one year before he applied for his disability pension, his application was properly dismissed. *Di Falco*, 122 Ill. 2d at 33.

In *Di Falco*, the supreme court reversed the Second District Appellate Court, the same court that had decided *Hahn*; but the supreme court made no mention of *Hahn*. Consequently, we refuse to accept the defendants' suggestion that the supreme court in *Di Falco* tacitly or impliedly overruled *Hahn*. We read *Di Falco's* holding to be a narrow one:

> "In conclusion, fire fighters applying for a duty-related pension under section 4—110 of the Illinois Pension Code must still be employed as fire fighters *at the time of application.*" (Emphasis added.) 122 Ill. 2d at 33.

After *Di Falco* was decided by the supreme court, the second district decided *Pierce v. Board of Trustees of the Police Pension Fund* (1988), 177 Ill. App. 3d 915, 532 N.E.2d 1004. In *Pierce*, the plaintiff was denied a disability pension, in part, because the board found his application premature since he had applied for a disability while still employed full time by the department on limited duty. He was subsequently suspended and then discharged as a patrolman. Recognizing *Hahn*, the court concluded that the Pension Code does not require that a police officer resign before applying for pension benefits. (*Pierce*, 177 Ill. App. 3d at 922.) Neither the defendant nor the appellate court took the position that *Di Falco* had overruled *Hahn*. In fact, it was the defendant Pension Board which cited *Hahn*, maintaining that under *Hahn* only retired or suspended officers were entitled to a disability pension.

The defendants also rely on *Freberg v. Board of Trustees and Firemen's Pension Fund* (1970), 128 Ill. App. 2d 369, 262 N.E.2d 22. We disagree that *Freberg* is apposite. The *Freberg* court denied a non-service disability pension to a fire fighter who applied for his pension *after* having been discharged from the department. Analyzing sections 4—111, 4—112 and 4—113 of the Illinois Pension Code, the court concluded that an individual must still be a fireman *at the time he applies for his pension. Freberg*, 128 Ill. App. 2d at 374.

Citing *Fenyes v. State Employees' Retirement System* (1959), 17 Ill. 2d 106, 160 N.E.2d 810, the Board argues that resignation by public employees can terminate the right to pension benefits. *Fenyes* also

is inapposite. In *Fenyes*, the plaintiff filed a claim for death benefits *after* her husband had voluntarily resigned his State employment before his death. The plaintiff conceded that she was not entitled to ordinary death benefits if her husband effectively withdrew from service before his death. Rather, she contended that her husband's resignation was a nullity because he was not mentally competent when he resigned. The sole issue in *Fenyes* was whether the decision of the Board that the claimant's husband was sane at the time of his resignation was against the manifest weight of the evidence.

The defendants also refer us to opinions from three other States. Again, we find those cases inapposite; each was decided on a specific interpretation of that State's peculiar statutory law.

■ The defendants urge us to consider the ramifications of a ruling granting a disability pension to the plaintiff. They argue that such a ruling will open the floodgates for claims for disability pensions by persons facing disciplinary charges. The defendants' argument assumes that all disciplinary charges in such cases will be sustained, an assumption we do not share. Moreover, and most important, an applicant for a disability pension must still prove disability. Finally, a recipient of a disability pension is subject to periodic examinations. If the recipient refuses to submit to the examination or the examination establishes that he is no longer disabled, the disability pension may be terminated. (*Hahn*, 138 Ill. App. 3d at 213.) A disabled officer is also subject to emergency duty. Clearly, the officer's retirement status does not abrogate his duty to respond. (*Hahn*, 138 Ill. App. 3d at 213.) No empirical proof has been submitted showing a spate of applications for disability pensions by fire fighters or policemen facing disciplinary charges in the five years since *Hahn* was decided. We are not persuaded that police and fire fighter pension funds will be improperly depleted by claims of about-to-be-discharged applicants. In sum, we believe that *Hahn* was correctly decided, and we will follow it. Consequently, we judge that the circuit court erred in affirming the defendant Board.

Since we have made the determination that the Board improperly held that the plaintiff's resignation barred him from a disability pension, the next question is the appropriate order to be entered. The Board made a finding of fact that "the more detailed and credible evidence" established that the plaintiff's emotional and mental states were not duty related. We infer that the Board recognized that the plaintiff was incapable of performing his duties as a police officer and thus was disabled within the meaning of the statute. The manifest weight of the evidence shows unequivocally that the plaintiff was dis-

abled and unfit for duty as a police officer at the time he applied for his disability pension. The medical evidence is uncontroverted. Dr. Tsai, Dr. D'Agostino and Dr. Ostrov explicitly confirmed the plaintiff's unfitness for duty, and Dr. Rhead clearly implies it. The issue of whether the Board's conclusion that any disability is duty related is not properly before us since it has not been argued or briefed. Our order, therefore, is that the judgment of the circuit court is reversed and the cause remanded to the defendant Board to make a determination of whether the plaintiff's disability is duty related or not duty related and to make an appropriate award. That award, of course, will be subject to review by the circuit court.

Judgment reversed and cause remanded with directions.

McNAMARA and RAKOWSKI, JJ., concur.