(No. 64803.—

JAMES B. DI FALCO, Appellee, v. THE BOARD OF TRUSTEES OF THE FIREMEN'S PENSION FUND OF THE WOOD DALE FIRE PROTECTION DISTRICT NO. ONE *et al.*, Appellants.

*Opinion filed March 23, 1988.*

WARD, J., dissenting.

Klein, Thorpe & Jenkins, Ltd., of Chicago (Arthur C. Thorpe and James P. Bartley, of counsel), for appellants.

Le Roy W. Gudgeon, Esq., of Northfield, for appellee.

CHIEF JUSTICE MORAN delivered the opinion of the court:

James B. Di Falco submitted to the board of trustees of the Firemen's Pension Fund of Wood Dale Fire Protection District No. One (board) an application for a duty-related disability pension. The board dismissed the application as untimely. Thereafter, Di Falco, plaintiff herein, brought an action in the circuit court of Du Page County for administrative review against the defendants herein: the board; Wood Dale Fire Protection District No. One, Du Page County, Illinois (district); and the board of fire commissioners of Wood Dale Fire Protection District No. One (commissioners). The trial court affirmed the decision of the board to dismiss the application. The court also granted the motion of the commissioners to be dismissed as party defendants.

On appeal, the appellate court reversed the dismissal of plaintiff's application, finding that nothing within the Illinois Pension Code (Ill. Rev. Stat. 1981, ch. 108½, par. 4—101 *et seq.*) precluded discharged fire fighters from being eligible for a disability pension. The appellate court also affirmed the dismissal of the commissioners as party defendants. (151 Ill. App. 3d 409.) We allowed the remaining defendants' petition for leave to appeal under Rule 315 (107 Ill. 2d R. 315).

The issue presented for review is whether a probationary fire fighter is entitled to a disability pension

when the fire fighter first applies for the pension a year after his discharge.

The relevant facts are undisputed. On June 1, 1982, plaintiff was appointed a probationary fireman-paramedic. While on duty in October 1982, he allegedly sustained injuries to his spine, necessitating a disability leave beginning about December 2, 1982.

On May 2, 1983, plaintiff received a letter from the commissioners advising him that his probationary status would be extended for a period equal to the amount of time between December 2, 1982, to whenever he returned to full-time service. However, by letter dated May 26, 1983, the commissioners advised plaintiff that effective on that date he was no longer a member of the firefighting force of that district. Plaintiff has not contested in this court the legality of his discharge; therefore, for the purpose of review, we shall assume his discharge was proper.

Almost a year later, on May 24, 1984, plaintiff submitted his application for a duty-related pension to the defendant board pursuant to the terms of the Pension Code (Ill. Rev. Stat. 1981, ch. 108½, par. 4—110). The board ordered plaintiff to undergo examinations by three physicians as provided for in section 4—112 of the Pension Code (Ill. Rev. Stat. 1981, ch. 108½, par. 4—112).

Both the defendant board and the trial court found that, as a matter of law, plaintiff was not entitled to apply for a disability pension, and dismissed plaintiff's application. The gist of the holding of the board and trial court, as well as of defendant's argument here, is that in order to qualify for a duty-related disability pension under section 4—110, an individual must be a "fireman," as used in that section, at the time of the application. Following this line of argument, defendants assert that, because plaintiff had been discharged May 26, 1983, he was no longer a "fireman" when he applied almost a

year later for a pension, and therefore was not entitled to a pension.

In the face of defendant's argument concerning the meaning of "fireman" as used in section 4—110, the appellate court found that there was no provision in the Illinois Pension Code at the time plaintiff entered the pension system that precluded application for a pension after discharge. The appellate court concluded that to foreclose plaintiff's right to apply for a disability pension after his discharge would have the effect of diminishing and impairing plaintiff's pension benefit rights in violation of section 5 of article XIII of the Illinois Constitution.

The Illinois Constitution provides that membership in a pension system of any local government unit in the State is "an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." (Ill. Const. 1970, art. XIII, §5.) After the effective date of the Constitution, the "contractual relationship" is governed by the actual terms of the Pension Code at the time the employee becomes a member of the pension system. (*Kerner v. State Employees' Retirement System* (1978), 72 Ill. 2d 507, 514, *cert. denied* (1979), 441 U.S. 923, 60 L. Ed. 2d 397, 99 S. Ct. 2032.) Therefore, in determining plaintiff's rights under the Pension Code, we must look to the language of the relevant statutes in effect in 1982 when plaintiff began paying into the pension fund.

Plaintiff applied for a duty-related disability pension under section 4—110 of the Pension Code. Section 4—110 provides in relevant part:

"If any *fireman*, as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty, is found, by the procedures specified in Section 4—112, to be physically or mentally permanently disabled for service in the fire department, so as to render necessary his being placed on disability pension, such disabled fire-

man shall be granted a disability pension of 65% of the monthly salary attached to the rank held by him in the Fire Department at the date he is removed from the municipality's Fire Department payroll." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 108½, par. 4—110.

The applicable definition of "fireman" is given in section 4—106(c) as "any person *employed* by a city in its fire service as a fireman, fire engineer, marine engineer, fire pilot, bomb technician, or scuba diver ***." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 108½, par. 4—106(c).

The central question in this case is whether the term "fireman" as used in section 4—110 is operative at the time of the disability or also at the time of application. In other words, must an applicant for a duty-related disability pension be a "fireman" both at the time of impairment and application, or only at the time of impairment.

When a statute is ambiguous on its face, as is section 4—110 even when read in conjunction with section 4—106, the court should look to similar statutes as an aid to construction. (*Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 219.) In this case, upon reviewing article 4 of the Pension Code as a whole, it becomes apparent that the purpose of a duty-related disability pension is to help provide only for fire fighters (and their spouses and children) who, if not for the disability, would still be employed as fire fighters and drawing their regular salary. On the other hand, the scheme of the Pension Code indicates that the purpose of a duty-related disability pension would not be served by granting a disability pension to an applicant who is no longer employed as a fire fighter because he has been discharged.

For example, section 4—101 provides that the firemen's pension fund is established for the benefit of "firemen as defined in Section 4—106" (Ill. Rev. Stat. 1981, ch. 108½, par. 4—101), that is, persons *employed* by a

city in its fire service (Ill. Rev. Stat. 1981, ch. 108½, par. 4—106(c)). (See *Peterson v. Board of Trustees of the Firemen's Pension Fund* (1973), 54 Ill. 2d 260, 263-64.) Therefore, the benefit of a duty-related pension is intended to go to a particular class and the purpose of the establishment of that benefit is much more selective than that of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*). Accordingly, a discharged fire fighter is obviously not "employed," in any sense of the word, by a city in its fire service and the pension fund was not established for his benefit.

Section 4—112 of the Pension Code stands as further evidence of the selective purpose of a duty-related disability pension. Section 4—112 governs the determination of disability and restoration to active service and provides in part:

"§4—112. Determination of Disability—Restoration to active service. *** Medical examination of a fireman receiving a disability pension shall be made at least once each year prior to attainment of age 50, as a check of the continuance of disability for service as a fireman. ***

Upon satisfactory proof being made to the Board that a fireman on the disability pension roll has recovered from his disability, the Board shall order that his pension cease. The fireman *shall* report to the marshal or the chief of the fire department, who *shall* thereupon order his reinstatement into active service in the same rank or grade which he held at the date he was placed on disability pension." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 108½, par. 4—112.)

Thus, a fire fighter on disability is subject to annual physical examinations, and, if no longer disabled, has the absolute right to return to duty. The statute is written in mandatory terms—"[t]he fireman shall report to the marshal" who "shall thereupon order his reinstatement" (Ill. Rev. Stat. 1981, ch. 108½, par. 4—112)—and does not allow for exceptions for discharged fire fighters. Sec-

tion 4—112 does not allow the pension board to merely terminate a discharged fire fighter's disability pension but rather requires that the pensioner be reinstated. If a fire fighter were to be discharged before applying for a disability pension, and yet still be given a disability pension, the discharge would make reinstatement to active duty impossible and would preclude compliance with the dictates of section 4—112. The provisions of section 4—112 thus strongly indicate that disability pensions are to be given only to fire fighters who would still be employed as fire fighters if not for their disability.

Section 4—113 further indicates that in order to begin receiving a disability pension, fire fighters must not have been discharged. Section 4—113 provides in part:

> "A fireman who has not completed 20 years of creditable service and is on the disability pension roll under any of the foregoing Sections whose disability continues for a period which when added to his period of active service equals 20 years may, if he is age 50 or more and he *elects to retire from the fire service,* exercise his option by written application to the Board and continue to receive a retirement pension equal to the same amount he was entitled to as a disabled fireman as of the date he was removed from the municipality's payroll for disability. A fireman electing to exercise such option shall be entitled to automatic increase benefits as provided in subdivision (a) of Section 4—109.1." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 108½, par. 4—113.)

Under section 4—113, a fire fighter on disability "under any of the foregoing sections," including section 4—110, may under certain circumstances elect to "retire from the fire service" and receive a retirement pension. A discharged fire fighter cannot "elect to retire" from the fire service because he is no longer a part of the fire service. Only those fire fighters who have never been discharged may "elect to retire." Therefore, that the terms of section 4—113 do not cover the possibility of a dis-

charged fire fighter being on disability pension indicates that fire fighters on the disability roll under section 4—110 cannot include discharged fire fighters.

Instead, the scheme of the Pension Code is to provide a refund for discharged fire fighters who have not received disability before being discharged. Section 4—116 concerns the refunding of contributions paid by fire fighters into the pension fund and provides in pertinent part:

"A fireman having less than 20 years of service who resigns or is discharged, and who has not theretofore received any disability pension payments, shall be entitled to a refund of the total amount contributed to the fund from his salary during such service." (Ill. Rev. Stat. 1981, ch. 108½, par. 4—116.)

Plaintiff is entitled to a refund under section 4—116, but not a disability pension under section 4—110.

In summary, upon reviewing article 4 of the Pension Code as a whole, we conclude that the primary purpose of the establishment of a duty-related disability pension under section 4—110 is to provide for the benefit of fire fighters who would still be employed as fire fighters and receiving a salary if not for the disability. Discharged fire fighters are no longer fire fighters because of the discharge, not the disability. To allow fire fighters who have been discharged to apply for disability pensions under section 4—110 would disrupt the pension scheme established by the legislature. Accordingly, the term "fireman" as used in section 4—110 is operative both at the time of impairment and application. To receive a disability pension under section 4—110, a fire fighter must not have been discharged prior to application therefor.

In so holding, we are merely determining the actual terms of the pension in effect at the time plaintiff became a member of the pension system. Therefore, it was not a subsequent legislative enactment but rather plain-

tiff's failure to meet a condition precedent to his right to a pension—that is, to be a member of the fire service without termination at the time he applied for his pension—which prevented plaintiff from receiving a pension. Therefore, no rights or conditions of plaintiff's contract effective at the time he began service are diminished or impaired by denying him a pension.

Plaintiff asserts that the conclusion we reach today will lead to abuse. According to plaintiff, pension boards will in the future merely discharge injured fire fighters before they have an opportunity to file for a duty-related pension and thereby avoid having to pay for the pension. Plaintiff has presented no evidence whatsoever of any such abuse in this case. In addition, we note that there are safeguards to prevent such abuse and the possibility of it happening are extremely minimal, if not nonexistent. First, in municipalities such as the defendant district, the board of fire commissioners and *not* the pension board controls the power of discharge. (Ill. Rev. Stat. 1985, ch. 127½, par. 37.13; *cf.* Ill. Rev. Stat. 1985, ch. 108, pars. 4—122 through 4—129.1.) Second, no member of any fire department may be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his defense. (Ill. Rev. Stat. 1985, ch. 24, par. 10—2.1—17. See also Ill. Rev. Stat. 1985, ch. 24, par. 10—1—18; ch. 127½, par. 37.13.) As for so-called probationary fire fighters, even assuming defendants are correct in asserting that probationary fire fighters may be discharged without cause, that possibility does not remove the obligation of the employing municipality to act in good faith. (See *Kennedy v. City of Joliet* (1942), 380 Ill. 15; *Edwards v. Codd* (1977), 59 A.D.2d 148, 398 N.Y.S.2d 153.) Attempting to save pension funds would not constitute cause for discharge nor would a discharge for that purpose be, in certain circum-

stances, a good-faith exercise of the asserted authority to summarily discharge probationary fire fighters.

Plaintiff also argues that the provisions of section 4—105b prevented him from applying for a disability pension before he was discharged. Section 4—105b provides:

> " 'Permanent disability': any physical or mental impairment that (a) can be expected to result in death, (b) has lasted for a continuous period of not less than 12 months, or (c) can be expected to last for a continuous period of not less than 12 months." (Ill. Rev. Stat. 1983, ch. 108½, par. 4—105b.)

Section 4—105b is obviously written in the disjunctive. Plaintiff need not have demonstrated all three elements before he was discharged May 26, 1983. Plaintiff need only have demonstrated that his physical impairment could be expected to last at least 12 months. The procedure for demonstrating that is given in section 4—112. Section 4—105b in no way prevented plaintiff from making a timely application.

Finally, plaintiff asserts that the term "fireman" is used in certain sections of the Pension Code to refer to persons other than those currently in service as fire fighters. For example, in section 4—109, the following language is used:

> "Any *fireman* age 50 or more who has creditable service of 20 years or more, and *is no longer in service as a fireman,* shall receive ***." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 108½, par. 4—109.

Plaintiff has ignored the effect of section 4—102. Section 4—102 provides that the term "fireman" shall have the meaning ascribed to it in section 4—106, "except when the context otherwise requires." (Ill. Rev. Stat. 1981, ch. 108½, par. 4—102.) The phrase "no longer in service as a fireman" used in section 4—109 is a change in the context of the definition of "fireman" *as used in that section.* In section 4—110, to the contrary, there is

no such contextual phrase and therefore the term "fireman" in section 4—110 refers only to fire fighters currently in service.

In conclusion, fire fighters applying for a duty-related pension under section 4—110 of the Illinois Pension Code must still be employed as fire fighters at the time of application. Plaintiff was discharged from the fire service almost a year before he applied for a pension. Therefore, his application for a pension was properly dismissed. For the reasons stated, we reverse the appellate court and affirm the order of the trial court.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE WARD dissenting:

I consider that the statutory interpretation of the majority is overly restrictive and that the appellate court properly analyzed the statute's intendment. Under the majority's narrow and literal view, eligibility for a line-of-duty disability pension is restricted to actively serving firemen. One who has been discharged from service has no pension disability rights even though, under the majority's view, the disability did not manifest itself until the fireman had been separated from municipal service. I do not consider that such a result was intended by the legislature.

Judging from the record, the position of the appellants appears to be something less than admirable. The plaintiff served as a paid on-call fireman from September 1977 until June 1, 1982, when he was appointed to the position of a probationary fireman-paramedic. He began contributions to the pension fund at the time he began work as a probationary fireman. It appears he was on duty in October 1982 when he received injuries to his spine, requiring his being placed in December 1982 on full physical-disability leave. The following May he was

informed that in February 1983 his probationary status had been extended for a period to be equal to the time he would be on physical-disability leave. Inexplicably, from the record, on May 26, 1983, he was informed that effective that date he was no longer a member of the department.

That the plaintiff did not apply for a duty-related pension until almost a year later appears to be without significance, as he states that he was entitled to full salary for a year under an applicable statute (Ill. Rev. Stat. 1981, ch. 70, par. 91). Too, as the appellate court noted, the Illinois Pension Code does not prescribe a specific time period within which an employee must apply for a pension.

I cannot agree with the majority's holding that an applicant for a duty-related disability pension must in the literal sense of the word be a fireman both at the time of injury and at the time of application for disability benefits.