FOURTH DIVISION
August 30, 2007

1-06-1827

| | | |
|---|---|---|
| WILLIAM TUCKER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE BOARD OF TRUSTEES OF THE POLICE | ) | |
| PENSION FUND OF THE VILLAGE OF PARK | ) | |
| FOREST ILLINOIS, | ) | The Honorable |
| | ) | Anthony L. Young, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Plaintiff William Tucker, who suffers from bilateral hearing impairment, appeals the decision of defendant Board of Trustees of the Police Pension Fund of the Village of Park Forest, Illinois (Board), which determined that it did not have jurisdiction to hear his request for pension benefits. In this court, plaintiff contends that the Board possessed statutory authority to hear his request and that he is entitled to pension benefits dues to his disability.

BACKGROUND

On January 10, 1989, the Village of Park Forest Police Department (Department) hired plaintiff as a police officer. In October 1997, the Village of Forest Park Fire and Police

1-06-1827

Commission (Commission) filed charges against plaintiff and sought to discharge him from employment. The Commission based its charges solely on plaintiff's alleged inability to perform full services for the Department due to his bilateral hearing impairment.

On November 19, 1997, plaintiff filed an application for certificate of disability (application), in which he sought a "line of duty" disability pension pursuant to section 3-114.1 of the Illinois Pension Code (Pension Code) (40 ILCS 5/3-114.1 (West 2002)) and, in the alternative, a "not on duty" disability pension pursuant to section 3-114.2 of the Pension Code (40 ILCS 5/3-114.2 (West 2002)). Therein, plaintiff reserved his entitlement to benefits in the event of a discharge.

On or about December 15, 1997, the Commission terminated plaintiff's employment with the Department based on his disability of bilateral hearing impairment. Thereafter, plaintiff filed a discrimination action against the Village of Forest Park in federal court under the Americans With Disabilities Act (ADA) of 1990 (42 U.S.C. § 12101 et seq. (2000)).

Subsequently, on February 6, 1998, plaintiff sought a "stay" in the proceedings on his application until a resolution was reached on his ADA claim in the federal court. In a written

correspondence to plaintiff's attorney via the Board's attorney on February 13, 1998, the Board declined to "stay" proceedings

On May 21, 1998, the Board notified plaintiff that pursuant to section 3-115 of the Pension Code (40 ILCS 5/3-115 (West 2002)), he was scheduled to appear for two medical examinations by Board-selected physicians.  The examinations were scheduled for June 15, 1998, and June 24, 1998.  The record shows that plaintiff cancelled both examinations.

On June 12, 1998, plaintiff notified the Board that he was withdrawing his application.  In doing so, however, plaintiff expressly stated that he preserved his right to seek disability benefits at a later date.  The Board responded by scheduling a hearing on the merits of plaintiff's application.  At the ensuing hearing, plaintiff informed the Board that he would proceed on his application.

On August 19, 1998, plaintiff again notified the Board in writing that he did not want to proceed with his application, but wished to preserve his right to proceed on the application at a later date.  Plaintiff requested that the Board "stay" proceedings until the resolution of his federal lawsuit. Pursuant to an August 27, 1998, notice of hearing, the Board informed plaintiff that it had scheduled a hearing on the merits of his application for September 8, 1998.

On September 1, 1998, plaintiff notified the Board that he was withdrawing his application. The Board, however, denied plaintiff's motion to withdraw his application during the September 8, 1998, hearing.

On November 1, 1998, the Board issued a written "Decision and Order" in which it dismissed plaintiff's application with prejudice due to his failure to submit to the scheduled medical examinations. The Board also informed plaintiff that it would not "have jurisdiction over Applicant as a result of his discharge from the Police Department, in the event that Applicant attempts to renew his disability application." Plaintiff then filed a "Complaint for Administrative Review" of the Board's decision with the circuit court of Cook County on November 24, 1998.

On February 18, 2000, the circuit court reversed the Board's decision and held that the Board erred in dismissing plaintiff's application. The Board appealed on March 7, 2000.

On March 14, 2001, this court entered its decision in the matter. Tucker v. Village of Park Forest, No. 1-00-0789 (2001) (unpublished order under Supreme Court Rule 23). Therein, this court determined that the Board erroneously denied plaintiff's motion to withdraw his application. This court noted that nothing in the Pension Code prevented an applicant from

-4-

voluntarily withdrawing his application for pension benefits. In so finding, this court also acknowledged the Board's concern that if plaintiff withdrew his application, he would be unable to file a new application at a later date because the Board would not have jurisdiction to rule on the petition under the Pension Code since plaintiff would no longer be employed as a police officer. This court concluded, however, that the Board's concerns were premature. As such, this court held that the Board's ruling dismissing plaintiff's application for pensions benefits was vacated as void and remanded the case to the Board to effectuate and give recognition to plaintiff's voluntary withdrawal of his application. Tucker, slip op. at 9.

On April 3, 2001, plaintiff filed a "Motion to Withdraw His September 1, 1998, Withdrawal of His Application for a Certificate of Disability" with the Board. Subsequently, on August 27, 2001, the Board vacated its November 1, 1998, ruling and granted plaintiff's September 1, 1998, motion to withdraw in accordance with this court's Rule 23 order. The Board did not address plaintiff's April 3, 2001, motion to withdraw his September 1, 1998, motion to withdraw.

On February 15, 2002, plaintiff filed a "Motion to Set Pending Motions for Hearing and Compel Decision" and an "Alternative Motion to Reinstate Application for Certificate of

1-06-1827

Disability."  At a regular quarterly meeting on March 5, 2002, the Board discussed plaintiff's motions and rendered a verbal decision that it no longer had jurisdiction to rule on plaintiff's pending motions.  The Board confirmed its ruling through its attorney in a March 11, 2002, letter to plaintiff, which was served via facsimile.  The letter provided in pertinent part:

> "I regret to inform you that the
> Pension Board cannot take any
> action with respect to either of
> the Motions as it lacks
> jurisdiction over these matters,
> for two reasons.  First on August
> 27, 2001 the Pension Board entered
> its 'Decision and Order on Remand,'
> granting Mr. Tucker's request to
> 'withdraw' his disability pension
> application.  That Decision
> terminated any proceedings before
> the Pension Board and no complaint
> for administrative review was filed
> to my knowledge.  Secondly, your
> client is no longer a 'police

> officer' and therefore under
>
> <u>DeFalco vs WoodDale Firemen's</u>
>
> <u>Pension Fund</u> [<u>sic</u>], [122 Ill. 2d 22
>
> (1988),] your client is no longer
>
> eligible to apply for a disability
>
> pension."

On March 28, 2002, plaintiff filed a "Complaint for Administrative Review" of the Board's decision with the circuit court. The circuit court affirmed the Board ruling in its June 9, 2006, written order. Plaintiff appealed.


ANALYSIS

Pursuant to section 3-148 of the Pension Code (40 ILCS 5/3-148 (West 2004)), we review the Board's decision in accordance with the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2004)). <u>Knight v. Village of Bartlett</u>, 338 Ill. App. 3d 892, 898 (2003). Accordingly, our review extends to all questions of fact and law presented in the record. <u>Knight</u>, 338 Ill. App. 3d at 898. That said, the determinative issue in the case at bar is whether the Board properly determined that it did not have jurisdiction to review plaintiff's February 15, 2002, motions. Since the Board clearly based its March 11, 2002, decision on its interpretation of provisions in the Pension Code,

we review its interpretation, which presents a question of law (Knight, 338 Ill. App. 3d at 898), *de novo* (City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 205 (1998)).

In this court, the Board first contends that plaintiff failed to seek a timely review of its August 27, 2001, decision, which granted plaintiff's September 1, 1998, motion to withdraw his application pursuant to this court's Rule 23 order. As such, the Board argues that the Board lacked jurisdiction to review that decision on March 11, 2002. In making its argument, the Board relies on Fredman Brothers Furniture Co. v. Department of Revenue, 109 Ill. 2d 202 (1985).

In Fredman Brothers Furniture Co., the Department of Revenue issued a notice of tax liability to petitioner Fredman Brothers Furniture Insurance Company, Inc. (Fredman Brothers), which Fredman Brothers protested. Thereafter, an administrative hearing was held to determine the correct tax liability figure, and following the hearing, the Department of Revenue levied a final assessment of $12,403.78 in taxes, penalties, and interest against the petitioner on August 24, 1981. The petitioner responded by filing a request for a rehearing on September 24, 1981, which was denied on October 15, 1981. Subsequently, the petitioner filed an action in the circuit court of Peoria County

on November 19, 1981, for judicial review of the tax assessment.

The circuit court initially found that the petitioner failed to post a sufficient bond within 20 days of the filing of its action and dismissed the case. The appellate court reversed that ruling and remanded the case with directions to review the petitioner's complaint. On remand, the Department of Revenue filed a motion to dismiss where it argued that the petitioner failed to file a timely complaint with the circuit court within 35 days of the Department's final ruling on August 24, 1981. The circuit court agreed and dismissed the case. The appellate court affirmed that ruling, and petitioner again appealed.

On review, the supreme court determined that the circuit court was exercising special jurisdiction conferred by the Administrative Review Act (Act) (Ill. Rev. Stat. 1981, ch. 110, par. 265). Fredman Brothers Furniture Co., 109 Ill. 2d at 211. As such, the court determined that the provisions of the Act specifying the time period in which to file a complaint for administrative review were jurisdictional. Fredman Brothers Furniture Co., 109 Ill. 2d at 211. The court concluded that the August 24, 1981, final assessment by the Department of Revenue constituted a final administrative decision. Fredman Brothers Furniture Co., 109 Ill. 2d at 213. In so ruling, the supreme court found that the petitioner's filing for a rehearing

constituted a new action, and thus did not postpone the time for filing a complaint for administrative review. Fredman Brothers Furniture Co., 109 Ill. 2d at 212-13. Accordingly, the supreme court affirmed the Department of Revenue's ruling where the petitioner did not file a complaint for administrative review until 87 days after the Department's final decision, which was well outside the 35-day window. Fredman Brothers Furniture Co., 109 Ill. 2d at 212-15.

We recognize that, unlike Fredman Brothers Furniture Co., the Board in the case at bar does not argue that the circuit court lacked jurisdiction to rule on its August 27, 2001, ruling, but that the Board lacked jurisdiction on March 11, 2002, to review its August 27, 2001, ruling. As such, Fredman Brothers Furniture Co., does not provide support for the Board's decision.

Nonetheless, we find that the Board properly concluded that it had lost jurisdiction prior to March 11, 2002. We first address plaintiff's contention that his April 3, 2001, motion was still pending until the Board's March 11, 2002, ruling, because the Board's August 21, 2001, order neglected to comment on his April 3, 2001, motion to withdraw his September 1, 1998, motion to withdraw his application. This court's March 14, 2001, Rule 23 order instructed the Board to grant plaintiff's September 1, 1998, motion to withdraw his application. Since the Board could

-10-

only act within the bounds of this court's mandate (<u>Allen v. Young</u>, 3 Ill. App. 3d 528, 530 (1972)), plaintiff's April 3, 2001, motion to withdraw his September 1, 1998, motion had no effect. Moreover, the April 3, 2001, motion was filed nearly three years after plaintiff filed his motion to withdraw his application on September 1, 1998. Accordingly, the motion was no longer pending following the Board's August 27, 2001, ruling.

Next, we address plaintiff's contention that the Board erroneously interpreted the Pension Code to conclude that it lacked jurisdiction to rule on his February 15, 2002, motion to refile his application. In <u>Robbins v. Board of Trustees of the Carbondale Police Pension Fund</u>, 177 Ill. 2d 533, 539 (1997), our supreme court noted that the controlling principles in reviewing statutory language are familiar when analyzing the Pension Code. The court provided:

> " 'The primary rule of statutory
> interpretation is that a court
> should ascertain and give effect to
> the intention of the legislature.
> The legislative intent should be
> sought primarily from the language
> used in the statute. [Citation.]
> The statute should be evaluated as

1-06-1827

a whole; each provision should be construed in connection with every other section. [Citation.] "Where the language of the act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature." [Citation.]' " Robbins, 177 Ill. 2d at 539, quoting Abrahamson v. Illinois Department of Professional Regulation, 153 Ill. 2d 76, 91 (1992).

Plaintiff at bar applied for pension benefits under sections 3-114.1 and 3-114.2 of the Pension Code, which both explicitly state that a "police officer" may apply for disability pension benefits.  Section 3-114.1(a) states in pertinent part:

"If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in

-12-

the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a disability retirement pension equal to the greatest of (1) 65% of the salary attached to the rank on the police force held by the officer at the date of suspension of duty or retirement, (2) the retirement pension that the police officer would be eligible to receive if he or she retired (but not including any automatic increase in that retirement pension), or (3) the pension provided under subsection (d), if applicable."  40 ILCS 5/3-114.1(a)(West 2004).

Section 3-114.2 provides in pertinent part:

"A police officer who becomes disabled as a result of any cause other than the performance of an

act of duty, and who is found to be physically or mentally disabled so as to render necessary his or her suspension or retirement from the police service in the police department, shall be entitled to a disability pension of 50% of the salary attached to the officer's rank on the police force at the date of suspension of duty or retirement." 40 ILCS 5/3-114.2 (West 2004).

Pursuant to the language of these statutes, the Board contends that plaintiff had to be a "police officer" when he filed his application for disability pension benefits.

Section 3-106 defines a police officer as:

"Any person who (1) is appointed to the police force of a police department and sworn and commissioned to perform police duties; and (2) within 3 months after receiving his or her first appointment and, if reappointed,

-14-

within 3 months thereafter, or as otherwise provided in Section 3-109, makes written application to the board to come under the provisions of this Article.

Police officers serving initial probationary periods, if otherwise eligible, shall be police officers within the meaning of this Section." 40 ILCS 5/3-106 (West 2004).

The record clearly shows that when plaintiff filed his motion to refile his application for disability pension benefits on February 15, 2002, he was no longer employed as a police officer by the Department. As such, the Board argues that it had no jurisdiction to consider his refiled application.

Plaintiff counters, in part, that this court's previous ruling rendered the Board's November 1, 1998, ruling on his initial application void and, thus, his subsequent motions were timely filed and the Board retained jurisdiction. Plaintiff, however, fails to comprehend that although this court's ruling rendered the Board's November 1, 1998, ruling void, it also instructed the Board to grant plaintiff's September 1, 1998,

1-06-1827

motion to withdraw.  Thus, plaintiff's motion to refile his application constituted an attempt to file a second application, which he clearly sought to do five years after he was discharged.

Plaintiff further argues that <u>Di Falco v. Board of Trustees of the Firemen's Pension Fund of the Wood Dale Fire Protection District No. One</u>, 122 Ill. 2d 22 (1988), provides guidance in the analysis of this case.  Although plaintiff recognizes that the holding in <u>Di Falco</u> contradicts his argument, he relies on the supreme court's analysis to support his contention in the case at bar.

In <u>Di Falco</u>, our supreme court affirmed the ruling of the board of trustees of the Firemen's Pension Fund of Wood Dale Fire Protection District No. One (board), which dismissed a firefighter's application for pension benefits as untimely where the plaintiff filed the application one year after his discharge from the fire department.  Similar to the police officer provisions' use of "police officer" in the Pension Code, the firefighter pension provisions of the Pension Code use the term "fireman" when discussing rights to pension benefits.  See 40 ILCS 5/4-110 (West 2004).[1]  The supreme court found section 4-110 of the Pension Code to be ambiguous on its face when defining "fireman" for determination of employment.  <u>Di Falco</u>, 122 Ill. 2d

---

[1]Formerly Ill. Rev. Stat. 1981, ch. 108½, par. 4-110.

-16-

at 27. The supreme court, however, determined that other sections of the Pension Code established that the plaintiff therein was not entitled to disability benefits. <u>Di Falco</u>, 122. Ill. 2d at 33.

Plaintiff at bar contends that if we similarly find sections 3-114.1 and 3-114.2 to be ambiguous, unlike <u>Di Falco</u>, we would find that he was entitled to pension benefits based on other provisions of the Pension Code. We disagree.

We initially recognize that the other cases plaintiff cites to support his argument, <u>Hahn v. Police Pension Fund of City of Woodstock</u>, 138 Ill. App. 3d 206 (1985) (officer who filed for benefits and then submitted resignation did not forego benefits due to resignation), <u>Pierce v. Board of Trustees of the Police Pension Fund of the City of Waukegan</u>, 177 Ill. App. 3d 915 (1988) (appellate court reversed Board's denial of off duty benefits in case where police officer filed application for benefits prior to his discharge), <u>Stec v. Oak Park Police Pension Board</u>, 204 Ill. App. 3d 556 (1990) (police officer's resignation subsequent to his application for pension benefits did not disqualify his application ), and <u>Greenan v. Board of Trustees of the Police Pension Fund of Springfield</u>, 213 Ill. App. 3d 179 (1991) (as in <u>Hahn</u>, the plaintiff's resignation subsequent to his application for pension benefits did not disqualify his right to benefits),

concerned police officers who resigned or were discharged <u>after</u> they filed their applications for pension benefits. As such, we find those cases inapposite.

Next, a review of the statutory language in sections 3-114.1 and 3-114.2 establishes that pension benefits are only made available for police officers as defined in section 3-106 of the Pension Code. As such, for purposes of sections 3-114.1 and 3-114.2, police officers are those "appointed to a police force of a police department and sworn and commissioned to perform police duties" (40 ILCS 5/3-106 (West 2004)). We find this language clearly indicates that the disability pension benefits are for those actively employed as police officers. Thus, where plaintiff was no longer employed as a "police officer" at the time he filed his second application, he was not entitled to disability benefits under the Pension Code.

Nonetheless, even if we found sections 3-114.1 and 3-114.2 to be ambiguous on their face as to whether an applicant for disability pension benefits had to be a "police officer" at the time of application, or just at the time of disability, our examination of other sections of the Pension Code support the conclusion that the term "police officer" used in sections 3-114.1 and 3-114.2 is operative at the time of disability and application. Similar to section 4-113 of the Pension Code (Ill.

1-06-1827

Rev. Stat. 1981, ch. 108 ½, par. 4-113),[2] as examined in <u>Di</u>
<u>Falco</u>, 122 Ill. 2d at 29-30, section 3-116 of the Pension Code
(40 ILCS 5/3-116.1 (West 2004)) provides a disability pension
option for disabled police officers who attain 50 years of age
and 20 years of active service when their period of disability is
added to years of active service.  The option allows the police
officer to select that his retirement pension benefits be based
on his disability benefit pay upon filing for retirement.  See 40
ILCS 5/3-116.1 (West 2004).  Thus, as the supreme court
recognized in analyzing the disability pension option for a
fireman in <u>Di Falco</u>, 122 Ill. 2d at 29-30, since a discharged
police officer cannot elect to retire, the term "police officer"
in section 3-116.1 does not concern discharged officers.  It
thereby follows that the term "police officer" in sections 3-
114.1 and 3-114.2 also do not include discharged police officers.
Accordingly, we conclude that the Board correctly held that it
did not have the authority to review plaintiff's second
application, which was filed nearly five years after plaintiff
was discharged as a police officer.

     In reaching this conclusion, we dismiss any claims based on
equitable or due process principles.  This court has previously
determined that pension benefits may be denied under the Pension

_____

     [2]Now 40 ILCS 5/4-113 (West 2004).

Code when the application for benefits is not filed in a timely manner. See <u>Donnells v. Woodridge Police Pension Board</u>, 159 Ill. App. 3d 735 (1987) (a police officer on medical leave, received notice of an opportunity to file for participation in the police pension fund where he previously had no rights due to his age at the time of employment, but due to his failure to timely file for benefits, the Board denied him participation in the pension fund).

We note that this case does not involve a municipality discharging a police officer for the purpose of denying him his right to apply for disability benefits. To the contrary, the record shows that the Board provided a hearing for plaintiff upon the filing of his first application when he was still employed as a police officer, and warned plaintiff that a withdrawal of his initial application might result in its loss of jurisdiction over a subsequent filing. In spite of this warning, plaintiff refused to be examined by physicians and went to the extent of filing an appeal to enforce his right to withdraw his application for disability pension benefits.

In agreeing with plaintiff's position that he had a right to withdraw his application, this court said, "While the Board's finding regarding its prospective jurisdiction over a re-filing may well be accurate, this issue was not ripe for determination

and, accordingly, the Board was not in the position to pass on that question." <u>Tucker</u>, slip op. at 9. The Board followed the mandate of this court on August 27, 2001, when it granted plaintiff's September 1, 1998, motion to withdraw his application. The Board's concern that it would lose jurisdiction over a refiled application indeed did prove to be accurate.

As previously explained, plaintiff's "motion to withdraw his motion to withdraw" was ineffectual as being filed in an untimely (albeit early) manner. Plaintiff's failure to take any action in response to the Board's order of August 27, 2001, led to the Board lacking jurisdiction to subsequently grant plaintiff the relief he sought. As discussed above, plaintiff, as a discharged employee, no longer had a right to file his second application for pension benefits under the Pension Code. Thus, despite plaintiff's claims to the contrary, there was no violation of an "enforceable contractual relationship" as provided in section 5 of article XIII of the Illinois Constitution (Ill. Const. 1970, Art. XIII, § 5).

CONCLUSION

For the foregoing reasons, we affirm the ruling of the Board.

Affirmed.

1-06-1827

CAMPBELL and NEVILLE, JJ., concur.                    _____

_____