2017 IL App (1st) 170804

THIRD DIVISION
December 27, 2017

No. 1-17-0804

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JASON KEELING, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2016 CH 7047 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE FOREST | ) | |
| PARK POLICE PENSION FUND, | ) | The Honorable |
| | ) | Peter A. Flynn |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Justices Fitzgerald Smith and Howse concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a hearing, the Board of Trustees of the Forest Park Police Pension Fund

(Board) found that it lacked jurisdiction over Jason Keeling's application for a line-of-duty

disability pension (40 ILCS 5/3-114.1 (West 2014)) because he was no longer a police officer

when he filed the application. The Board also rejected Keeling's assertion that equitable estoppel

prevented the Board from denying the timeliness of his claim. Specifically, the Board found its

actions did not lead Keeling to believe another document filed during his employment was

sufficient to place his claim before the Board. On administrative review, the trial court found that equitable estoppel applied and reversed the Board's decision. We now reverse the court's decision and reinstate the decision of the Board.

¶ 2                                    I. BACKGROUND

¶ 3      On July 28, 2013, Keeling sustained injuries while working as an officer in the Village of Forest Park (Village). While Keeling was on disability leave, the Forest Park Police Department (Police Department) began an internal investigation into allegations against him. Keeling testified at a hearing before the Board that Kimkea Harris, the attorney for the Fraternal Order of Police (the Union), advised him to file an application for a disability pension. Harris also told Keeling that he needed to do so while still employed as a police officer. Keeling added that other officers similarly told him he needed to complete a disability application to ensure he was protected.

¶ 4      Keeling then contacted Officer Rob Bryant who was both president of the Union and a Board trustee. Keeling testified that he told Bryant what Harris had advised him to do. Additionally, Bryant testified that Keeling wanted to be sure he would have pension coverage if the Village terminated his position. Keeling testified that he met with Bryant in his capacity as Union president on April 2, 2014.

¶ 5      According to Keeling, Bryant brought a two-page document to their meeting. Bryant did not recall whether he had brought the document, which was titled, "Duty Disability/Occupational Disease Pension Benefit *** Information Request Form" (information request form). After Keeling completed the document, both men signed it. Keeling testified, "I believed that that was the documentation I needed to submit to kind of lock myself in in case this injury became permanent."

¶ 6    Bryant testified that he told Keeling he thought the information request form "would start the ball rolling," but "was not totally sure of the official start." Bryant knew at the time that there was a separate application form but he did not know exactly how to start "the process." Bryant further testified he did not know that Keeling would have to fill out the designated application form to formally apply and, as far as Bryant knew, the information request form commenced the process before the Board.

¶ 7    According to Bryant, he told Keeling that he would give the information request form to the Board's attorney, who would in turn advise Keeling of anything that needed to be done to apply. Bryant also told Keeling he hoped to get him other materials if the information request form was insufficient. In addition, Keeling testified that Bryant said he would send additional documents after submitting the information request form. Bryant advised the Board at its next meeting that Keeling was going to seek disability benefits.

¶ 8    Keeling testified that meanwhile, he spoke to Harris, who said the information request form should be fine as long as both Bryant and Keeling had signed it. This apparently reinforced Keeling's belief that tendering the information request form constituted filing a disability application. Keeling acknowledged, however, that the Board did not send him any correspondence stating that the form was sufficient to preserve his right to apply for a disability pension.

¶ 9    Instead, Board attorney Richard Reimer wrote to Keeling on April 2, 2014, the same day that Keeling executed the information request form. Reimer's letter acknowledged Keeling's "request for an application for disability benefits" and provided instructions:

"In order for the Pension Board to *begin* to adjudicate your disability claim, the Pension Board will require you to fully complete the enclosed Application for Disability

Pension Benefits. Please completely fill out the enclosed Application and return it to me at the above address."  (Emphasis added.)

The letter detailed the Board's process, and advised Keeling that "no action can be taken until such time as you complete and submit the enclosed Application and the Pension Board obtains copies of the medical records from all of your treating/examining physicians." Attached was the "Forest Park Police Pension Board Application for Disability Pension Benefits"(designated application form).

¶ 10    Keeling conceded that he received this letter but testified that he did not immediately submit the designated application form because "it was too early in my treatment and I didn't know what the extent of my injuries would be." Keeling also testified that he had not compared Reimer's letter and the accompanying form to the documentation for his 2008 and 2012 disability pension claims.

¶ 11    On April 23, 2014, the Police Department terminated Keeling's employment and the Union filed a grievance on his behalf. Before an arbitration hearing could be held, Keeling agreed to resign. On July 8, 2015, he tendered a letter resigning his employment effective as of April 23, 2014. Keeling also completed the designated application form and filed it the next day, July 9, 2015. Keeling testified that he did so after his doctors determined he would not recover further.

¶ 12    At the end of July, Keeling entered into a written "Employment Separation and Release Agreement" (separation agreement) with the Village, which recited that Keeling had resigned effective retroactively to April 23, 2014. The general release clause stated:

"It is the intent of the Village and Employee that this be a full, complete and general release, except that this General Release shall not apply to Employee's claim for

4

disability benefits pending before the Village of the Forest Park Police Pension Fund \*\*\*,

or the Employee's pending worker's compensation claims."

According to Keeling, he believed that he had already applied for a disability pension.

¶ 13    Given that Keeling's employment ended before he filed the designated application form, the Board held an evidentiary hearing to determine whether it had jurisdiction over his claim. Keeling and Bryant, the only witnesses, testified to the foregoing events. On behalf of Keeling, Attorney Jerome Marconi argued that the issues were whether Keeling's information request form was sufficient to commence procedures before the Board and whether Keeling detrimentally relied on actions of the Board indicating that said form was sufficient.

¶ 14    Marconi argued that Bryant and Keeling discussed filing an application and Bryant, a Board trustee, knew Keeling wanted to preserve his right to seek disability pension benefits. Bryant gave Keeling the information request form and Keeling detrimentally relied on it, believing that the form started the process. Moreover, Marconi argued that the Board lacked published rules and regulations to examine.

¶ 15    Referring to the information request form, Marconi stated, "I can see the title on it. I don't know why he wasn't given the actual application at that point. Apparently, it wasn't in the possession of the Board." We note that David Preiwisch, the Board's president, explained at the hearing that the Board's attorney, rather than the Board itself, was the investigative body and, consequently, Reimer was required to handle all legal aspects of disability applications.

¶ 16    Reimer argued that the information request form was not an application, that Keeling effectively resigned as an officer on April 23, 2014, and that Keeling did not file the designated application form until July 2015. Reimer acknowledged that the Board did not have rules and regulations, but argued that the Board's policy had always been the same: "You're sent an

application, and what triggers the commencement of the disability process is receipt of the application."[1] Thus, it appears that the Board, at a minimum, had unpublished policies. Reimer also argued that Keeling understood the Board's process because he had properly applied for benefits in 2008 and 2012.

¶ 17    Keeling's post-hearing memorandum argued that his information request form was legally sufficient and, consequently, the Board had jurisdiction. Keeling further argued that the Board was equitably estopped from denying that it had jurisdiction to consider his claim.

¶ 18    On May 23, 2016, the Board dismissed Keeling's claim for lack of jurisdiction because he did not file his application for a disability pension while still employed as a police officer. The Board found that Harris advised Keeling to file an application before resigning. That being said, the information request form was not the designated application form. When Keeling tendered the completed information request form to Bryant, Bryant said the Board's attorney would tell Keeling what he needed to do to apply for a pension. Although Reimer wrote to Keeling, Keeling did not file his application until July 2015:

> "The Applicant attempts to place blame on everyone but himself. First, Applicant disingenuously claims that he had 'no idea how to perfect his disability claim.' Yet, Applicant conveniently ignores the fact that he had applied for and received disability benefits from the Pension Board on two prior occasions, in 2008 and 2012. *** The Board specifically finds that the Applicant is not a credible witness as to his testimony concerning his unfamiliarity with the Pension Board's disability application process, and accordingly places no weight on his testimony on this issue, and places greater weight on the testimony of Officer Bryant."

---

[1] President Preiwisch added that the Board would send potential applicants the application packet regardless of whether they made their request orally or in writing.

¶ 19    The Board also rejected Keeling's assertion that equitable estoppel applied. Specifically, Keeling did not demonstrate that Bryant's acts with respect to the information request form were affirmative acts of the Board. The Board stated:

> "At best, the Applicant has shown that he met with Officer Bryant, that Officer Bryant told him that additional information would be sent by the attorney, and that at no time after he submitted [the information request form] did he receive any correspondence from the Board, indicating that [the information request form] was sufficient to preserve his rights to a disability pension."

Accordingly, the Board dismissed Keeling's claim.

¶ 20    Keeling then filed a complaint for administrative review and the trial court reversed the Board's decision. The court found the Board was equitably estopped from denying that it had jurisdiction based on the supreme court's recent decision in *Grimm v. Calica*, 2017 IL 120105. We note that *Grimm* did not involve the doctrine of equitable estoppel. The Board now appeals.

¶ 21                                    II. ANALYSIS

¶ 22                         A. Timeliness of the Disability Claim

¶ 23    On appeal, the Board first asserts that it properly determined Keeling's claim was untimely because he failed to file the designated application form while still employed as a police officer. We agree.

¶ 24    The Illinois Pension Code (Pension Code) dictates that we review the Board's decision pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)). 40 ILCS 5/3-148 (West 2014). Accordingly, we review the decision of the administrative agency, not the trial court. *Marconi v. Chicago Heights Police Pension Board,* 225 Ill. 2d 497, 531 (2006). Factual rulings are reviewed under the manifest weight of the evidence standard while legal

questions are reviewed *de novo*. *Id*. In addition, an agency's ruling on a mixed question of law and fact will not be reversed unless clearly erroneous. *Edwards v. Addison Fire Protection District Firefighters' Pension Fund*, 2013 IL App (2d) 121262, ¶ 31. Under any standard, the plaintiff in administrative review has the burden of proof. *Marconi,* 225 Ill. 2d at 533.

¶ 25    The parties dispute which standard of review is appropriate. The Board asserts that the operative question is whether Keeling submitted an application while employed as a police officer, a factual determination that cannot be reversed unless it was against the manifest weight of the evidence. Keeling asserts, however, that this matter involves defining an "application" under the Pension Code, a matter of statutory construction subject to *de novo* review. We find that neither characterization is entirely accurate because the parties have failed to consider the Pension Code within the unique context of administrative law.

¶ 26    Section 3-114.1(a) of the Pension Code states as follows:

"If *a police officer* as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, *the police officer* shall be entitled to a disability retirement pension \*\*\*." (Emphases added.) 40 ILCS 5/3-114.1(a) (West 2014).

Consequently, to seek a disability pension under section 3-114.1(a), one must be a police officer.

¶ 27    Section 3-106 defines a "Police Officer":

"Any person who (1) is appointed to the police force of a police department and sworn and commissioned to perform police duties; and (2) within 3 months after receiving his or her first appointment and, if reappointed, within 3 months thereafter, or

as otherwise provided in Section 3-109, makes written application to the board to come under the provisions of this Article." 40 ILCS 5/3-106 (West 2014).

This court has determined, however, that the term "police officer" does not include officers who have been discharged. *Tucker v. Board of Trustees of the Police Pension Fund of the Village of Park Forest*, 376 Ill. App. 3d 983, 991 (2007); see also *Di Falco v. Board of Trustees of the Firemen's Pension Fund of the Wood Dale Fire Protection District No. One*, 122 Ill. 2d 22, 24-25, 33 (1988) (finding that allowing discharged firefighters to apply for disability pensions would disrupt the statutory pension scheme). Thus, a pension board lacks authority to review a disability pension application that was filed after an officer has been discharged. *Tucker*, 376 Ill. App. 3d at 989, 991. Stated differently, case law has determined, as a matter of statutory construction, that one must file an application while still a police officer in order to seek benefits under section 3-114.1(a). See *Hahn v. Police Pension Fund of the City of Woodstock*, 138 Ill. App. 3d 206, 211 (1985) (finding that where an employee applies for a pension and specifically reserves his rights upon subsequently resigning, the termination of his employment does not preclude this right to pension benefits).

¶ 28    As stated, Keeling argues we must engage in statutory construction to determine what constitutes an "application," a term which he observes is not defined by the Pension Code. That being said, the term "application" is not found in section 3-114.1(a) whatsoever. On the contrary, case law has adopted that term in discussing who may seek a disability pension. In any event, we find the well-settled role of administrative agencies renders statutory construction unnecessary.

¶ 29    An administrative agency has discretion to determine the details of that which the legislature has authorized in more general terms. *Boles Trucking, Inc. v. O'Connor*, 138 Ill. App. 3d 764, 778 (1985). Powers or duties granted to administrative agencies by the legislature

include the power to do everything that is reasonably required to execute such powers or duties. G*ersch v. Department of Professional Regulation*, 308 Ill. App. 3d 649, 658 (1999) (citing *Lake County Board of Review v. Property Tax Appeal Board of the State of Illinois*, 119 Ill. 2d 419, 427 (1988)). Additionally, an administrative agency has reasonable discretion to determine the manner of executing the law. *R.L. Polk & Co. v. Ryan*, 296 Ill. App. 3d 132, 140 (1998). Furthermore, administrative agencies have wide latitude in fulfilling their duties (*Lake Country Board of Review*, 119 Ill. 2d at 428), and a court may not overturn an agency's action or policy solely because the court finds the action or policy to be inappropriate or unwise (G*ersch*, 308 Ill. App. 3d at 658).

¶ 30     The legislature cannot be expected to anticipate how every pension board subject to this statute can best obtain information from individuals who desire pension benefits under section 3-114.1(a). Choosing what paperwork will best meet an agency's needs is by definition an administrative action. See Black's Law Dictionary (10th ed. 2014) (defining an "administrative action" as "[a] decision or an implementation relating to the government's executive function or a business's management."). Furthermore, Keeling has not argued that the Board's designated application form is itself an unreasonable exercise of the Board's discretion. While Keeling has argued that the Board failed to *publish* rules on how to apply, that presents a distinct legal issue.[2] Moreover, Keeling has failed to explain how the lack of a published rule has any bearing on the Board's purely administrative functions. Simply put, an "application" is whatever the Board says it is, within reason.

---

[2] Section 3-131 of the Pension Code states, "[t]he board shall have the powers and *duties* stated in Sections 3-132 through 3-140.1 in addition to the other powers and duties provided under this Article." (Emphasis added.) 40 ILCS 5/3-131 (West 2014). Section 3-140 includes the power and duty "[t]o make necessary rules and regulations in conformity with the provisions of this Article, and to publish and transmit copies from time to time to all pensioners and contributors." 40 ILCS 5/3-140 (West 2014).

¶ 31    Here, Keeling filed only one designated application form. At the time of filing, Keeling was no longer a police officer. Although Keeling filed an information request form while still an officer, that form was not an application for a disability pension. At best, it was an application for information. Accordingly, the Board's determination that he failed to timely file an application was not against the manifest weight of the evidence.[3]

¶ 32                                    B. Equitable Estoppel

¶ 33    The Board also asserts that equitable estoppel does not apply here. In response, Keeling obfuscates two distinct arguments: (1) Keeling knew he needed to file an application and believed he had; and (2) Keeling knew he needed to do something, but he did not know he needed to file an application. Obfuscation aside, Keeling has not shown that the Board erred. In light of the evidence presented and our deference to the Board's credibility findings, the Board correctly found that equitable estoppel did not apply. *Plowman v. Department of Children & Family Services*, 2017 IL App (1st) 160860, ¶ 24 (finding that the administrative agency is entitled to determine the witnesses' credibility and resolve conflicts in the evidence); 735 ILCS 5/3-110 (West 2014) (stating that an agency's factual findings are *prima facie* true and correct).

¶ 34    Equitable estoppel may only be applied to a municipality in compelling or extraordinary circumstances. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 35. The aggrieved party must show that (1) the municipality affirmatively acted; (2) its act induced the aggrieved party's substantial reliance; and (3) the aggrieved party substantially altered its position due to justifiable reliance. *Morgan Place of Chicago v. City of Chicago*, 2012 IL App (1st) 091240, ¶ 33. In cases involving a public body, the elements of estoppel are supplemented with another restriction: a public body will be estopped only where required to prevent fraud or

---

[3] While the parties have discussed Keeling's understanding of the Board's process, his understanding has no bearing on whether he did or did not file an application while employed as a police officer.

injustice, particularly when public revenues are at stake. *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 48. Whether estoppel should be applied against a municipality depends on the circumstances of a particular case. *Morgan Place of Chicago*, 2012 IL App (1st) 091240, ¶ 33. "If under all of the circumstances, the affirmative acts of the public body have created a situation where it would be inequitable and unjust to permit it to deny what it has done or permitted to be done, the doctrine of estoppel may be applied against it." *Stahelin v. Board of Education School District No. 4*, 87 Ill. App. 2d 28, 39 (1967).

¶ 35    Keeling has not met his burden of identifying an affirmative act of the municipality. Keeling specifically testified that he met with Bryant in his capacity as the Union's president, rather than his capacity as a trustee. Additionally, the acts of a ministerial officer are not necessarily the acts of the public body itself. *Morgan Place of Chicago*, 2012 IL App (1st) 091240, ¶ 33. If unauthorized acts of a public body's employees were permitted to bind it, the public body would be helpless to correct errors or escape the financial repercussions of actions by unscrupulous public servants. *Patrick Engineering, Inc.*, 2012 IL 113148, ¶ 36. Thus, Bryant's alleged act of tendering the information request form was not attributable to the Board. The only act attributable to the Board was Reimer's letter, which Keeling acknowledged did not indicate the information request form was sufficient to preserve his disability pension claim.

¶ 36    Keeling's reliance on the separation agreement between the Village and himself is misplaced. "A municipality and a pension board are two separate entities." *Eschbach v. McHenry Police Pension Board*, 2012 IL App (2d) 111179, ¶ 25. Thus, the general release clause's exemption for disability benefits cannot be attributed to the Board, which was not a party to the separation agreement.

¶ 37    Keeling also asserts Bryant *failed to inform him* that he needed to submit the Board's formal application or that his information request form was insufficient to commence disability pension proceedings. Similarly, Keeling states, "At no point did the Pension Board advise Keeling that [the information request] form was not a request for pension benefits." The doctrine of equitable estoppel, however, requires the municipality's affirmative action, not inaction. *Patrick Engineering, Inc.*, 2012 IL 113148, ¶ 39. Thus, Keeling's arguments in this regard are irrelevant. We further note that the information request form itself identifies what it is requesting: "[i]nformation."

¶ 38    Even assuming Bryant's alleged tender of the information request form and related statements constituted affirmative acts of the Board, Keeling cannot demonstrate justifiable reliance. First, by Keeling's own admission, Harris and his fellow officers told him to file an *application* for a disability pension, not just any document. In addition, Bryant gave Keeling a form that was unequivocally labeled as a form to request *information* about disability pension benefits, not a form to apply for benefits. Marconi's arguments before the Board appear to acknowledge this.

¶ 39    Moreover, the Board believed Bryant's testimony that he told Keeling he "was not totally sure of the official start." The Board also believed that Bryant told Keeling that Reimer would advise him of anything that needed to be done to apply.[4] Thus, the record shows that Bryant did not tell Keeling that his information request form had preserved his claim and it would have been unreasonable for Keeling to have believed that it had. Regardless of Keeling's assertion that he *knew* Bryant could give him guidance on how to apply, Bryant merely guided Keeling toward more information. *Cf. Rossler v. Morton Grove Police Pension Board*, 178 Ill. App. 3d 769, 771-

---

[4] While the trial court found the Board's act of putting Keeling's claim on the agenda supported equitable estoppel, the record does not show when Keeling learned of that act so as to support justifiable reliance.

72, 775-76 (1989) (where the pension board affirmatively told the claimant that his leave of absence would be credited toward his pension, and later granted his request for a pension based on credit earned during his absence, the Board would be equitably estopped from reconsidering the pension of that claimant, who had since retired and moved). Harris's subsequent indication that the information request form was sufficient does not change the result, as it cannot be attributed to the Board. Keeling's alleged subjective belief that he had preserved his claim was unjustified.

¶ 40    Assuming further still that Keeling could have initially believed the information request form was sufficient to preserve his claim, Keeling's subsequent receipt of Reimer's letter and the designated application form should have given him pause. First, the letter stated that Reimer had received Keeling's "request for an application," demonstrating that the Board did not consider the information request form to be an application. The letter also stated that the Board would not begin adjudicating his disability claim or take any action until he filed his application. Furthermore, the designated application form was clearly labeled as an application. Considered together, those documents should have at the very least made Keeling question whether the information form was sufficient to preserve his claim. Nothing prevented Keeling from contacting Reimer to seek clarification. See *R & B Kapital Development, LLC, v. North Shore Community Bank & Trust Co.*, 358 Ill. App. 3d 912, 922 (2005) (stating that a party claiming estoppel cannot close his eyes to obvious facts or neglect to seek easily accessible information and blame others for his ignorance). Moreover, the Board rejected Keeling's testimony that he did not know how to perfect his disability claim because Keeling had properly followed application procedures on prior occasions.

¶ 41    Keeling nonetheless argues that the Board erroneously relied on his experience with previous claims. He contends timing was irrelevant on prior occasions because there was no threat of unemployment. He also argues that the Board's credibility finding was unreasonable because "the Board failed to introduce any evidence as to how Keeling initially applied for benefits on prior occasions." Specifically, he observes that the record does not show who had initially given Keeling paperwork on prior occasions and whether that initial paperwork resembled the information request form or the designated application form.

¶ 42    We remind Keeling that he alone had the burden of demonstrating that equitable estoppel applied. Any gaps in the record are attributed to him. Accordingly, we find no basis to set aside the Board's credibility determination.

¶ 43    Keeling further argues he would not have signed the separation agreement had he known that he needed to file an application to preserve benefits. We reiterate that Harris, Keeling's fellow officers and Reimer all told Keeling he needed to file an application. As stated, it would be unreasonable for Keeling to have believed that he had. Keeling's execution of the separation agreement does not show the Board misled him. At best, it suggests he forgot what he had been told. These circumstances in no way compel a determination that the Board must be equitably estopped to prevent fraud or injustice.

¶ 44    While we review the decision of the Board, not the trial court, we briefly address the supreme court's decision in *Grimm*, which Keeling now argues supports his position. In *Grimm*, the supreme court found the administrative agency in question sent a misleading letter that could have led the plaintiff to file an untimely complaint for administrative review. *Grimm*, 2017 IL 120105, ¶¶ 24-28. The court found that because the plaintiff did not receive due process, the failure to timely file her complaint for administrative review did not deprive the trial court of

15

jurisdiction. *Id*. ¶ 28. That being said, *Grimm* did not address equitable estoppel, which presents an entirely separate legal matter from due process. Thus, *Grimm* does not dictate the result here. In any event, Keeling has failed to demonstrate that the Board misled him in any manner.

¶ 45    Finally, Keeling has forfeited his suggestion that the Board violated his right to due process. A party forfeits administrative review of issues and defenses not placed before the administrative agency. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 926 (2010); *SMRJ, Inc. v. Russell*, 378 Ill. App. 3d 563, 576 (2007). While Keeling's memorandum filed before the Board casually referred to due process, his arguments before the Board did not expound on that contention and the Board never addressed it. Keeling then sought administrative review of the Board's decision without obtaining a ruling on his due process argument. See *Janousek v. Slotky*, 2012 IL App (1st) 113432, ¶¶ 34-35 (finding the defendants abandoned their contention by focusing on other matters at the hearing and failing to obtain a ruling); *In re Marriage of Stockton*, 401 Ill. App. 3d 1064, 1075-76 (2010) (finding the litigant abandoned her argument where she failed to address it at a hearing before the trial court and the court did not rule on it).

¶ 46    Moreover, Keeling's brief on appeal merely refers to due process in passing, without citation to authority. While the brief discusses *Grimm*, which in turn discussed due process, the brief does so only in the context of equitable estoppel. This court is entitled to clearly defined issues supported by cohesive arguments and pertinent citation to authority as required by Illinois Supreme Court Rule 341(h)(7) (eff. Nov. 1, 2017). *Velocity Investments, LLC, v. Alston*, 397 Ill. App. 3d 296, 297 (2010). Additionally, the failure to comply with Rule 341(h)(7) results in forfeiture. *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶

56. Accordingly, Keeling's due process contention does not merit our consideration under these circumstances.

¶ 47                                        III. CONCLUSION

¶ 48     The Board adopted a disability pension application form that Keeling has not challenged as being unreasonable. Yet, Keeling did not file that application while employed as a police officer. Thus, the Board properly found Keeling's application was untimely. Even assuming Keeling subjectively misunderstood what needed to be done to preserve his claim, no affirmative act of the Board caused that misunderstanding and the doctrine of equitable estoppel did not apply.

¶ 49     For the foregoing reasons, we reverse the trial court's decision and reinstate the decision of the Board.

¶ 50     Circuit court judgment reversed.

¶ 51     Board decision affirmed.